UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RONALD SMOTHERS,

        Plaintiff,                        Hon. Richard Alan Enslen

v.                                                Case No. 1:06 CV 119

MICHIGAN DEPARTMENT
OF CORRECTIONS, et al.,

        Defendants.
_____/


## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant's Motion to Dismiss. (Dkt. #61). Pursuant to 28 U.S.C. § 636(b)(1)(B) granting authority for United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of motions for dismissal or summary judgment, the undersigned recommends that Defendants' motion be **granted**.


I.        **BACKGROUND**

The following allegations are contained in Plaintiff's complaint. On August 18, 2005, a guard was assaulted in Plaintiff's housing unit. (Complaint at ¶ 15). In response, Plaintiff's housing unit was "locked-down" for a period of 5-6 days. During this time Plaintiff was not permitted to shower, was denied cleaning supplies and recreation opportunities, and was not permitted to go to the law library. *Id.* On August 23, 2005, Plaintiff filed a "dispute resolution" complaint in the Michigan Court of Claims against Defendant Smith. (Complaint at ¶ 16). On August 25, 2005, Plaintiff filed a "statutory request

for declaratory ruling" with the Michigan Department of Corrections against Defendant Smith. (Complaint at ¶ 17).

On August 29, 2005, Plaintiff was speaking with Defendant Fate about the ongoing problems in his housing unit. (Complaint at ¶ 18). Defendant Fate informed Plaintiff that if he continued to file grievances and complaints he might find himself "placed in the transition unit." *Id.* Plaintiff subsequently submitted a grievance against Defendant Fate alleging staff corruption. (Complaint at ¶ 19). On September 20, 2005, Plaintiff was removed from the general population unit and placed in the "transition unit." (Complaint at ¶ 20). Plaintiff was informed that he was being transferred because he had improperly placed paper in his cell window. *Id.* As a result of this transfer, Plaintiff was removed from his work assignment and was no longer permitted to participate in the facility's art program. (Complaint at ¶¶ 21-22).

Plaintiff asserts that Defendants Smith, Klinesmith, and Fate violated his First Amendment right to be free from improper retaliation, deprived him of the right to due process, and subjected him to cruel and unusual punishment. (Complaint at ¶¶ 31-53). Defendants now move for the dismissal of Plaintiff's action on the ground that Plaintiff has failed to state a claim upon which relief may be granted and, furthermore, because Plaintiff has failed to properly exhaust available administrative remedies as to his various claims. As discussed herein, the Court concludes that Plaintiff has failed to properly exhaust all of his claims save his retaliation claim against Defendant Smith. With respect to this particular claim, however, the Court finds that Plaintiff has failed to state a claim upon which relief may be granted.

**II.        ANALYSIS**

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). The exhaustion requirement is mandatory and applies to all actions "brought with respect to prison conditions," regardless of the wrong alleged or the type of relief sought. *Id.* Furthermore, because the prisoner must comply with the administrative agency's "deadlines and other critical procedural rules," the exhaustion requirement is not satisfied by the filing of an untimely or otherwise procedurally defective administrative grievance. *See Woodford v. Ngo*, 126 S.Ct. 2378, 2386 (2006). Plaintiff included with his complaint copies of four separate grievances each of which is discussed below.

A.        Grievance Number ICF 05-09-1254-28K

On August 21, 2005, Plaintiff submitted a Step I grievance against Defendant Smith alleging that the lockdown (instituted following the prisoner assault on a guard described above) violated the rights of an unspecified group of prisoners. (Complaint, Exhibit 1). Pursuant to Michigan Department of Corrections Policy, prisoners are not permitted to submit group or joint grievances. *See* Michigan Department of Corrections, Policy Directive 03.02.130 ¶ F. Plaintiff's grievance was rejected for violating this rule. (Complaint, Exhibit 1). This determination was upheld at Steps II and III of the grievance process. *Id.*

As indicated above, the exhaustion requirement is not satisfied by the filing of an untimely or otherwise procedurally defective administrative grievance. Because this particular grievance

was not submitted in accordance with established MDOC procedures, the Court concludes that Plaintiff failed to properly pursue this grievance through all three steps of the grievance process.

### B. Grievance Number ICF 05-11-1540-28E

On October 31, 2005, Plaintiff submitted a Step I grievance against Defendant Fate alleging that her decision to transfer Plaintiff to the "transition unit" was undertaken to improperly retaliate against Plaintiff for exercising his constitutional rights. (Complaint, Exhibit 5).

Pursuant to Michigan Department of Corrections Policy, before asserting a Step I grievance the prisoner must - within two business days "after becoming aware of a grievable issue" - attempt to resolve the matter with the staff member involved. *See* Michigan Department of Corrections Policy Directive 03.02.130 ¶ R.  If the attempt to resolve the matter is unsuccessful, the prisoner must submit his Step I grievance within five business days of the unsuccessful attempt at resolution. *See* Michigan Department of Corrections Policy Directive 03.02.130 ¶ X.

The actions giving rise to this grievance occurred on September 20, 2005, and Plaintiff attempted to resolve the matter on September 26, 2005. (Complaint, Exhibit 5). Because Plaintiff's grievance was submitted more than one month after his unsuccessful attempt to resolve the matter, his grievance was rejected as untimely at Steps I, II, and III of the grievance process. *Id.* As previously noted, the exhaustion requirement is not satisfied by the filing of an untimely or otherwise procedurally defective administrative grievance.

Plaintiff asserts that while this particular grievance may have been untimely, he previously filed a timely grievance to which prison officials failed to respond. According to Plaintiff, therefore, his failure to properly exhaust his claims against Defendant Fate should be overlooked.

Plaintiff asserts that on August 30, 2005, he filed a grievance against Defendant Fate which prison officials simply ignored. (Dkt. #65 at 3). According to MDOC policy, however, if a prisoner "does not receive a timely response" to a grievance he may appeal the matter to the next sequential step in the grievance process. *See* Mich. Dep't of Corr., Policy Directive 03.02.130, ¶ R. Plaintiff acknowledges that he failed to pursue his August 30, 2005 grievance beyond Step I of the grievance process, despite the fact that the relevant policy directive permitted him to continue pursuing the matter through Step III of the grievance process.

In sum, Plaintiff's August 30, 2005 grievance against Defendant Fate was not pursued through Step III of the grievance process. While Plaintiff's October 31, 2005 grievance was pursued through Step III of the grievance process, this grievance was not submitted in accordance with established MDOC procedures. The Court finds, therefore, that Plaintiff has failed to properly exhaust his claims against Defendant Fate.

        C.        Grievance Number ICF 05-11-1545-28E

On October 3, 2005, Plaintiff submitted a Step I grievance against Defendant Klinesmith alleging that she was depriving Plaintiff of his constitutional right to access the courts. (Complaint, Exhibit 7). While Plaintiff's grievance was submitted within five business days of his unsuccessful attempt to resolve the matter, this grievance was nonetheless rejected as untimely because Plaintiff waited three weeks to attempt to resolve the matter with Defendant Klinesmith. *Id.* Thus, for the reasons previously stated, the Court concludes that Plaintiff failed to properly pursue this grievance through all three steps of the grievance process.

Again, Plaintiff asserts that while this particular grievance may have been untimely, such failure should be excused because he timely filed a grievance to which prison officials failed to respond. Plaintiff asserts that on September 5, 2005, he filed a grievance against Defendant Klinesmith which prison officials simply ignored. (Dkt. #65 at 3-4). According to MDOC policy, however, if a prisoner "does not receive a timely response" to a grievance he may appeal the matter to the next sequential step in the grievance process. *See* Mich. Dep't of Corr., Policy Directive 03.02.130, ¶ R. Plaintiff acknowledges that he failed to pursue his September 5, 2005 grievance beyond Step I of the grievance process, despite the fact that the relevant policy directive permitted him to do so.

In sum, Plaintiff's September 5, 2005 grievance against Defendant Klinesmith was not pursued through Step III of the grievance process. While Plaintiff's October 3, 2005 grievance was pursued through Step III of the grievance process, this grievance was not submitted in accordance with established MDOC procedures. The Court finds, therefore, that Plaintiff has failed to properly exhaust his claims against Defendant Klinesmith.

However, even if the Court finds that Plaintiff's grievance was properly exhausted, such fails to advance Plaintiff's cause. While Plaintiff's grievance asserts that Defendant Klinesmith deprived him of the right to access the courts, in his complaint Plaintiff does not assert a denial of access to the courts claim. However, even if Plaintiff's complaint is construed as asserting a denial of access to the courts claim, such claim must be dismissed for failure to state a claim upon which relief may be granted.

It is well established that prisoners possess a constitutional right to access the courts. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (citing *Lewis v. Casey*, 518 U.S. 343 (1996)). However, to establish a violation of this right, the prisoner must establish that "he suffered an actual litigation related injury or legal prejudice because of the actions of the defendants." *Thomas v. Rochell*,

47 Fed. Appx. 315, 317 (6th Cir., Sep. 18, 2002) (citing *Lewis*, 518 U.S. at 349-51). Plaintiff has failed to allege that he has suffered any litigation-related injury. Thus, even if Plaintiff's complaint is interpreted as asserting a denial of access to the courts claim (which is deemed to be properly exhausted), such claim must nonetheless be dismissed for failure to state a claim upon which relief may be granted.

        D.     Grievance Number ICF 05-10-1429-27B

On September 26, 2005, Plaintiff submitted a Step I grievance against Defendant Smith alleging that his transfer to the transitional unit constituted improper retaliation and, furthermore, violated his right to procedural due process. (Complaint, Exhibit 8).

The response to Plaintiff's Step I grievance asserted that the grievance was rejected as asserting a non-grievable claim in violation of MDOC policy. Specifically, the grievance was rejected for attempting to "grieve the content of Department-wide policy and procedure." This procedural failure notwithstanding, the grievance respondent addressed (and denied) Plaintiff's grievance on the merits. While the determination by prison officials that Plaintiff submitted a procedurally defective grievance would appear to compel the conclusion that Plaintiff has failed to properly grieve these particular issues, the Court is not persuaded that such is the proper result in this particular instance.

First, the Court finds unreasonable the determination that Plaintiff was attempting to grieve "the content of Department-wide policy and procedure." While Plaintiff's grievance is devoid of factual allegations in support thereof, it clearly articulates the assertion that Defendant Smith violated his right to due process and, furthermore, subjected him to improper retaliation. Such is clearly grievable under MDOC policy. *See* Michigan Department of Corrections, Policy Directive 03.02.130, ¶ E. Moreover, the grievance respondent's one-sentence assertion that the grievance was rejected for failure

to comply with MDOC policy is called into question by her three paragraph denial of the grievance on the merits. Thus, the Court finds that Plaintiff has properly grieved these particular claims. Such claims must nonetheless be dismissed.

Liability in a § 1983 action cannot be based upon a theory of respondeat superior or vicarious liability, as Plaintiff must instead allege personal involvement by a particular defendant. *See Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999) (liability is not to be found in passive behavior or an alleged failure to act, rather liability must be based upon "active unconstitutional behavior"); *Salehpour v. University of Tennessee*, 159 F.3d 199, 206-07 (6th Cir. 1998); *Street v. Corrections Corp. of America*, 102 F.3d 810, 817-18 (6th Cir. 1996).

Plaintiff asserts that his transfer to the transition unit was undertaken for retaliatory purposes. However, Plaintiff has presented neither allegation nor evidence that Defendant Smith played any active role in Plaintiff's transfer to the transition unit. Liability cannot rest on Defendant Smith's status as the facility's warden, as Plaintiff must "allege personal involvement" by Defendant Smith. Plaintiff has failed to do so. Accordingly, Plaintiff's retaliation claim against Defendant Smith must be dismissed. Plaintiff's due process claim must likewise be dismissed, as he was not entitled to a hearing prior to his transfer to the transition unit.

To determine whether transfer of an inmate from the general prison population involves the deprivation of a liberty interest protected by the due process clause, the Court must determine if the action imposes an "atypical and significant" hardship on the inmate "in relation to the ordinary incidents of prison life." *Jones v. Baker*, 155 F.3d 910, 911 (6th Cir. 1998) (quoting *Sandin v. Conner*, 515 U.S. 472, 483 (1995)). The Sixth Circuit has repeatedly held that confinement to administrative segregation does not present an "atypical and significant" hardship implicating a protected liberty interest. *See*

*Jones*, 155 F.3d at 812-23 (two years of segregation while inmate was investigated for murder of prison guard in riot); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995) (inmate serving life sentence was placed in segregation after serving thirty days of detention for misconduct conviction of conspiracy to commit assault and battery); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir.1997) (one year of segregation after inmate was found guilty of possession of illegal contraband and assault and where reclassification was delayed due to prison crowding).

Accordingly, the Court finds that Plaintiff's retaliation and due process claims against Defendant Smith must be dismissed for failure to state a claim upon which relief may be granted.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendant's Motion to Dismiss, (dkt. #61), be **granted** and Plaintiff's action **dismissed**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,


Date:  February 21, 2007                 /s/ Ellen S. Carmody
                                         ELLEN S. CARMODY
                                         United States Magistrate Judge